IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| MICHAEL W. PRICE | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 12-2655 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Michael W. Price ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.§§ 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 12) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 14). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. Procedural History

Plaintiff protectively filed his application for SSI on May 12, 2009 alleging disability since July 1, 2008 on the basis of back and knee problems, Lyme's disease and problems with his shoulders. R. at 114, 129, 133. His claim was denied initially and on reconsideration. R. 60-65. On January 20, 2011, a hearing was held before an administrative law judge ("ALJ") at

which Plaintiff and a vocational expert ("VE") testified. R. at 23-53. Claimant was represented by counsel. In a decision dated February 11, 2011, the ALJ denied Plaintiff's request for benefits. R. at 11-22. The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-4.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for SSI using the sequential process set forth in 20 C.F.R. § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since May 12, 2009, his application date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: Lyme disease, degenerative disc disease status post lumbar fusion, osteoarthritis status post left knee and left shoulder arthroscopic surgery, left hip osteoarthritis, depression and anxiety. At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff was unable to perform his past relevant work. At step five, the ALJ concluded that Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, he concluded that Claimant was not disabled. R. at 11-22.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

## IV. Discussion

Plaintiff argues that (1) the Appeals Council erred in not remanding the case to the ALJ; (2) the ALJ erred in his treatment of the opinion of consultative examiner, Dr. Jensen; and (3) the ALJ failed to evaluate his impairments under Listing 1.02A. Al arguments are wholly without merit.

### A. Appeals Council

Plaintiff first argues that that the Appeals Council should have remanded his case after receiving new and material evidence. The hearing before the ALJ in this matter took place on January 20, 2011. On January 25, 2011, the Claimant had surgery on his left hip of which the ALJ was aware. R. at 17, 31. The ALJ issued an unfavorable decision on February 11, 2011, and Claimant requested review. The Appeals Council denied review and in its denial, considered additional evidence submitted by Plaintiff's counsel including discharge instructions

from Sinai Hospital with respect to the January 25, 2011 surgery. R. at 4, 328. Plaintiff also submits to the Court a copy of the operative report from the January 25, 2011 surgery. Pl.'s Mot. Summ., ECF No. 12, Ex. 1. Apparently the operative report was submitted electronically to the Social Security Administration on August 3, 2011 but is not part of the administrative record. Plaintiff contends that these reports together provide a basis for changing the ALJ's decision.

The Appeals Council must consider evidence submitted with a request for review if the evidence is new, material, and relates to the period on or before the date of the ALJ's decision. *See Wilkins v. Secretary of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir.1991). Evidence is new if it is not duplicative and cumulative. *Wilkins,* 953 F.2d at 96. Evidence is material if "there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* The evidence at issue relates to Claimant's January 25, 2011 surgery, approximately 2 weeks prior to the ALJ decision in this case and therefore relates to the period on or before the decision.

Although it is unclear why the operative report was not made part of the record, the Court does not find that either it or the discharge instructions warranted a different result. Interestingly, Plaintiff does not argue how the evidence would mandate a different result; only that the case should be remanded for further consideration. At the outset, the Court notes that the ALJ was aware of the scheduled surgery. R. at 17, 31. The ALJ reviewed the evidence of Claimant's hip impairment noting that his left hip osteoarthritis constituted a severe impairment at step two of the sequential evaluation. R. at 13. The ALJ reviewed evidence that Claimant

4

had positive impingement signs in both hips and that an MRI of his hips revealed a possible labral tear in the left. R. at 17, 302-03, 306-07. Claimant was referred to a surgeon who noted significant pain in his left hip with sitting, standing and walking and that Claimant suffered from early degenerative changes in his left hip as well as disc protrusion at the left L4-L5 nerve root. R. at 17, 306-07.

The Appeals Council had the discharge instructions before it which indicated home care needs of either crutches or a walker. R. at 328. The Court agrees with the Commissioner that the operative report does nothing more than confirm the details of a procedure and diagnosis of which the ALJ already knew about. *See also* Pl.'s Mot. Summ., ECF No. 12, Ex. 1 at 2 (noting preoperative diagnosis of "Labral tear of the left acetabulum" with postoperative diagnosis of "Labral tear of the left acetabulum with chronal delamination"); *Id*. at 6 ("Discharge without further immediate PT. . ."). The evidence Plaintiff relies on is simply not material as there is not a reasonable possibility that it would have changed the outcome.

    B.    <u>Dr. Jensen</u>

Plaintiff next argues that the ALJ erred in his consideration of the opinions of consultative examiner, Dr. Jensen. R. at 193-200, 214-20. He argues that although the ALJ mentioned Dr. Jensen's findings, he did not specify what weight he afforded his opinion. While the Court acknowledges that the ALJ did not indicate precisely what weight he afforded Dr. Jensen's opinion, the Court notes that the ALJ conducted a thorough summary of the two consultative examinations performed by Dr. Jensen in October, 2009 and July, 2010 noting the results were generally similar. R. at 18. The ALJ recognized that Claimant's grip strength

actually improved as well as his lumbar flexion; he had a full range of motion in all joints; and full motor strength in upper and lower extremities. R. at 18, 195, 216. Dr. Jensen did not note any exertional limitations in either report. The ALJ further recognized Dr. Jensen's indication that Claimant's back problem would cause discomfort and dysfunction if he had to stand for long periods or if he had to lift or carry heavy weights. R. at 18, 197. He noted that Claimant is restricted with respect to heavy lifting, prolonged standing or walking and repetitive bending or stooping. Finally, the ALJ noted Dr. Jensen's observation that he believed that there was a dissonance between the severity of Claimant's pain symptomology and lack of therapy to gain relief. R. at 18, 218. Based on Dr. Jensen's opinion (as well as Claimant's medical history and treatment records), the ALJ limited Claimant to lifting 20 pounds occasionally and ten pounds frequently with additional upper extremity limitations. The ALJ specifically stated that this is consistent with Dr. Jenson's recommendation that he not lift heavy weights. R. at 18. In addition, in assessing Claimant's credibility, the ALJ again referred to Dr. Jensen's own observation about the dissonance between complaints of pain and therapy sought. R. at 19, 218. The Court finds that given the detailed citation to Dr. Jensen's opinions coupled with the ALJ's analysis, the ALJ did not err. *See Muhl v. Commissioner of Soc. Sec.,* No. SAG-11-967, 2012 WL 5986961 at * 2 (D. Md. Nov. 28, 2012) ("It is clear that the ALJ considered and evaluated Dr. Colley's report. . . Labeling the measure of weight afforded to Dr. Colley's report would not provide any additional information regarding the ALJ's evaluation of Mr. Muhl's claim. Because the facts supporting his evaluation are already clear from the ALJ's opinion, the failure to assign particular weight to Dr. Colley's opinion provides an inadequate basis for remand."); *Thomas v.*

6

*Commissioner of Soc. Sec.,* No. SAG-11-3587, 2013 WL 21026, at * 2 (D. Md. Jan. 17, 2013) ("Ms. Thomas's other argument is that the ALJ's assignment of weight to Dr. Tanman's opinion was inadequate because he simply assigned 'weight,' without specifying a precise amount of weight. . . . Although the ALJ certainly could have been more descriptive, in the context of the ALJ's extensive review of the medical source opinions, the assignment of weight was sufficiently descriptive to permit review. It is clear from the ALJ's analysis that he reviewed and summarized Dr. Tanman's opinion, and gave it weight to the extent it was consistent with the RFC the ALJ had found, giving no weight to inconsistent portions. Moreover, given the ALJ's assignments of weight to the other medical sources, substantial evidence would support the ALJ's determination regardless of an assignment of 'great weight' or 'no weight' to Dr. Tanman's opinion.").

    C.    <u>Listing 1.02A</u>

Plaintiff's final argument is that the ALJ erred in his failure to consider Listing 1.02A-major dysfunction of a joint. That Listing requires him to demonstrate dysfunction of a joint, characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion, such that the dysfunction resulted in an inability to ambulate effectively. He was also required to present findings of joint space narrowing, bony destruction, or ankylosis of the affected joint. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 1.02. The Claimant has the burden of demonstrating that he meets all of the criteria of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). Notably, Claimant does nothing to demonstrate how his impairment fulfilled the requirements

of Listing 1.02A.

Where there is factual support that a Listing could be met, an ALJ must analyze whether the Claimant's impairment meets or equals the Listing. *See Cook v. Heckler,* 783F.2d 1168, 1173 (4th Cir.1986). However, "[u]nder *Cook,* the duty of identification of relevant listing impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel,* 68 F.Supp.2d 629, 645 (D.Md.1999);. "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id*. Here, the Court does not find that the evidence in the record rises to the level to have triggered the ALJ's duty to discuss Listing 1.02A. Rather, the ALJ's opinion discusses various evidence which are inconsistent with the necessary components to meet Listing 1.02A. For example, in August, 2010, Dr. Szczukowski noted that although there was "mild medial joint space narrowing" in Claimant's knee, alignment looked good and range of motion was good. R. at 302-03. Joint space in hips was noted as "fine" and x-rays showed no significant arthritic changes. *Id*. He was noted to have normal gait and the ability to stand without difficulty, normal motor strength and motor function and no subluxations present in his lumbosacral spine and negative straight leg raise tests. R. at 273-74; *see also* R. at 54, 202-09, 221 (reports of state agency consultants which did not indicate any Listings was satisfied). In addition, the evidence before the ALJ clearly demonstrates that Claimant did not have an inability to ambulate effectively which means:

an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities....

20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 100B2b. While the discharge instructions from Claimant's January 25, 2011 surgery indicated the need for either crutches or a walker post-surgery, R. at 328, there is nothing in the record to demonstrate that this need was expected to be permanent or last at least twelve continuous months. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 100B2a.

V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: December 11, 2013   _____/s/_____
                           THOMAS M. DIGIROLAMO
                           United States Magistrate Judge